# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9499 | **DATE** | 7/29/2003 |
| **CASE TITLE** | Shapiro Olefsky & Co. vs. Stanley Cohen | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The last line of paragraph 1 on Page 8 of this Court's Memorandum Opinion and Order entered on 7/10/03 is amended as follows: Had Cohen been forthcoming about his services for Dr. Gaynor, Shapiro-Olefsky would not have made payment under the promissory note. All other aspects of the Opinion to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 30 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/29/2003 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SHAPIRO, OLEFSKY & COMPANY, )
an Illinois partnership, )
)
        Plaintiff, )
)
v. ) Case No. 02 C 9499
)
STANLEY COHEN, an individual, )
)
        Defendants. )
)

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Shapiro, Olefsky & Company ("Shapiro-Olefsky") filed a two-count complaint against Defendant Stanley Cohen ("Cohen"), alleging breach of contractual obligations arising from a covenant not to compete (Count I), and fraudulent misrepresentations relating to that covenant (Count II). Presently before us is Cohen's motion to dismiss Shapiro-Olefsky's complaint. For the reasons set forth below, we deny Defendant's motion.

## I. BACKGROUND[1]

On October 28, 1996, Cohen agreed to sell his accounting practice, the Cohen Group ("Cohen Group"), in an Asset Purchase Agreement to Shapiro-Olefsky. Shapiro-Olefsky purchased certain client lists, work papers, and goodwill from the Cohen Group. Shapiro-Olefsky paid Cohen $175,000 for the assets on October 28, 1996. The parties also executed a Promissory Note ("note" or "promissory note") for an additional $241,000, plus interest, payable to Cohen on May 1, 1998. The promissory note served

---

[1] The following facts are taken from Plaintiff's complaint and are deemed true for the purposes of this motion. See *MCM Partners, Inc. v. Bartlett Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995).

as compensation to Cohen for his adherence to the covenant not to compete and non-solicitation agreement ("non-compete agreement" or "agreement"). The non-compete agreement prohibited Cohen from servicing his former clients and certain Shapiro-Olefsky clients for the next three years. Under the agreement, a "client" was any person or entity for whom Shapiro-Olefsky or the Cohen Group had performed services in the three years immediately preceding October 28, 1996.[2] The non-compete agreement contained a liquidated damages clause, which required Cohen to pay Shapiro-Olefsky two hundred percent (200%) of his annual billings in the event of a breach. The agreement also stated that any breach by Cohen would cause the amount then unpaid under the promissory note to become null and void. Further, Cohen stipulated that the duration and geographical scope of the agreement were fair and reasonable in the accounting field at that time. He also agreed that the agreement did not deprive him of the ability to support himself or his family.

The promissory note provided for a recalculation of the principal and revision of the restricted client list on November 1, 1997. On April 18, 1998, the parties executed an amendment to the promissory note (the "amendment"), which stated that the principal amount of the promissory note had been reduced from $241,000 to $175,000 as of November 1, 1997.

Shapiro-Olefsky claims that between October 1996 and April 1998 Cohen provided accounting services for numerous individuals in violation of the terms of the non-compete agreement. Specifically, Shapiro-Olefsky alleges that Cohen performed services for Dr. Michael Gaynor ("Dr. Gaynor") at three important time intervals. First, Cohen had performed services for Dr. Gaynor immediately preceding the signing of the non-compete agreement on October 28, 1996, which places Dr. Gaynor within the list of restricted clients. Second, Cohen allegedly performed services for Dr. Gaynor between the October

---

[2]The Agreement extended to or any subsidiary, affiliate, spouse, issue or sibling of any such person or entity.

28, 1996 signing of the non-compete agreement and the April 18, 1998 amendment to the non-compete. Shapiro-Olefsky alleges that Cohen's work during this time period violated the non-competition agreement. Third, Shapiro-Olefsky claims Cohen continued to perform services for Dr. Gaynor after the execution of the amendment.[3]

The amendment specifically allowed Cohen to perform accounting services for certain individuals and entities for whom Cohen had previously been prohibited from servicing.[4] Despite this change, the amendment provided that the non-compete agreement would remain in "full force and effect." On May 1, 1998, Shapiro-Olefsky, believing that Cohen's signature on the amendment represented his continued adherence to the terms of the non-compete agreement, paid Cohen the amount due under the note, as amended. Shapiro-Olefsky claims that it "recently discovered evidence that Cohen violated the terms of the non-compete agreement prior to its expiration and prior to the execution of the amendment." Pl. First Am. Compl. ¶ 17. Shapiro-Olefsky filed suit against Cohen alleging breach of contract and fraudulent misrepresentations.

---

[3]This would have been a continuing violation, barring an exception within the terms of the Amendment. The time period at issue in this case, however, is the second time period.

[4]The Amendment, like the Non-Compete Agreement, did not specify which individuals Cohen could now perform services for, thus it is unclear if Dr. Gaynor was still subject to the original agreement after the Amendment. Whether Dr. Gaynor had been removed from the restricted clients list, however, is not important at this stage because Shapiro-Olefsky adequately pled a breach of the Non-Compete Agreement at the second time period.

## II. ANALYSIS

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir.1995), *aff'd* 161 F.3d 443 (7th Cir.1998), *cert. denied* 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, a party pleading facts constituting fraud or mistake must do so with particularity. *See* Fed.R.Civ.P. 9(b).

### B. Discussion

*Count I: Breach of Contract*

To plead a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) a breach of the contract by the defendant; (3) plaintiff's performance of all conditions; and (4) damages to plaintiff as a consequence.[5] *See Disk Jockey Referral Network, Ltd. v. Ameritech Publishing of Illinois*, 230 Ill.App.3d 908, 912, 172 Ill.Dec. 725, 596 N.E.2d 4 (1992). Shapiro-Olefsky first alleges that the non-compete agreement constituted a contract between itself and Cohen. *See* Pl. First Am. Compl. ¶ 1, 27. Cohen counters that Shapiro-Olefsky failed to plead that the non-compete agreement is a reasonable restriction on trade. Shapiro-Olefsky need not plead such an element to state

---

[5]The parties apparently agree that Illinois law governs all of the state-law claims in this case. Therefore, for the purposes of this motion, the court will apply Illinois state law to all of the state-law claims.

a claim for breach of contract[6]. Indeed, Cohen's argument addresses the merits of the complaint rather than whether the complaint states a claim. As such, we find that Shapiro-Olefsky has pled the first element of a breach of contract claim.

Shapiro-Olefsky next alleges that Cohen breached the non-compete agreement. *See* Pl. First Am. Compl. ¶ 1, 17-18, 22-24, 29-31. Cohen asserts that Shapiro-Olefsky failed to identify to whom Cohen provided services so as to breach the non-compete agreement. We disagree. According to Shapiro-Olefsky's complaint, the non-compete agreement prohibited Cohen from providing services those entities or individuals who were clients of either the Cohen Group or Shapiro-Olefsky in the three years prior to the execution of the agreement. *See* Pl. Compl. at ¶¶ 1, 10-12. Shapiro-Olefsky states that Cohen provided services to Dr. Gaynor, an individual who was subject to the non-compete agreement, after the agreement's execution. *See* Pl. Compl. at ¶¶ 18, 21-22. It is clear that Shapiro-Olefsky's complaint identifies Dr. Gaynor as an individual for whom Cohen provided services in violation of the non-compete agreement.

Third, Shapiro-Olefsky alleges that it performed its obligations under the non-compete agreement. *See* Pl. Compl. at ¶¶ 1, 8, 25, 28, 34. Cohen does not dispute that Shapiro-Olefsky complied with the terms of the agreement. Shapiro Olefsky also alleges the fourth element of a breach of contract claim: that it was damaged by Cohen's breach. *See* Pl. Compl. at ¶¶ 1, 25, 32, 35, 37-38. Shapiro-Olefsky states that it paid Cohen $175,000 based on his representation when the amendment was executed that the non-compete agreement was still in full force and effect. *See* Pl. Compl. at ¶¶ 1, 17, 35. Cohen made this representation despite having provided services to Dr. Gaynor, an individual

---

[6]Although Shapiro-Olefsky need not plead that the Non-Compete Agreement was a reasonable restriction on trade, Cohen agreed, in executing and signing the Non-Compete Agreement, that the duration and geographical scope of the Agreement were fair and reasonable. *See* Pl.['s] First Am. Compl. Ex. C ¶ 1d.

subject to the non-compete agreement. *See* Pl. Compl. at ¶¶ 18-21, 35. Furthermore, Shapiro-Olefsky notes that, under the liquidated damages clause of the non-compete agreement, it is entitled to 200% of Cohen's annual billings. *See* Pl. Compl. at ¶¶ 14, 32.

Cohen argues that Shapiro-Olefsky is barred from recovering under the liquidated damages clause. We disagree. A liquidated damages clause is valid under Illinois law if the damages from a breach are difficult to calculate and the amount of the fixed damages are a reasonable forecast of the damage likely to occur. *See Bauer v. Sawyer*, 134 N.E.2d 329, 333 (Ill. 1956). A provision that does not meet each requirement will be construed as a penalty. *See id.* Cohen has the burden of proving that the liquidated damages provision to which he knowingly consented was actually a penalty clause. *See First Nat'l Bank of Chicago v. Tele-Network Co.*, 946 F.2d 516, 521 (7th Cir. 1991). It is unclear whether Cohen disputes that it was difficult to calculate the damages from a breach at the time the parties entered into the non-compete agreement. It is also unclear whether Cohen disputes that the fixed damages were a reasonable forecast of the damage likely to occur. Instead, Cohen argues that his consent to the non-compete agreement generally, and to the liquidated damages clause specifically, does not make the clause enforceable per se. Cohen therefore has failed to meet his burden of identifying any aspect of the liquidated damages clause which makes it either unreasonable or unenforceable. We therefore reject Cohen's argument that Shapiro-Olefsky is barred from recovering under the liquidated damages clause[7] and hold that Shapiro-Olefsky has stated a claim for breach of contract.

---

[7]Cohen also argues that the liquidated damages clause is invariant and therefore unreasonable. Cohen lumps together the remedy that calls for 200% of annual billings and the remedy of voiding unpaid money due under the Note. He claims that the sum is invariant because Shapiro-Olefsky asks for $175,000.00 either way. However, Cohen misinterprets the terms of the Agreement. The two damage remedies appear in two separate, clearly identifiable subsections of the Non-Compete Agreement. The 200% of annual billings is the only liquidated damages remedy. The $175,000.00 is not part of the liquidated damages. Because the liquidated damages clause varies according to Cohen's annual billings, it is not unreasonable.

*Count II: Fraudulent Misrepresentation*

Cohen claims that Shapiro-Olefsky has not stated a cause of action for fraudulent misrepresentation.[8] To state a cause of action involving fraud in Illinois, a plaintiff must allege:

> (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.

*Brandon Apparel Group, Inc. v. Quitman Mfg. Co., Inc.*, 52 F.Supp.2d 913, 921 (N.D. Ill. 1999), (citing *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992)).

Shapiro-Olefsky adequately pled each of the six elements of fraud. First, Shapiro-Olefsky's complaint states that Cohen affirmed that the Non-Compete Agreement was still in "full force and effect," which Shapiro-Olefsky claims was both material and false. *See* Pl. First Am. Compl. ¶ 35. The representation was material, according to Shapiro-Olefsky, because it was this statement which induced Shapiro-Olefsky to pay Cohen the $175,000.00 owed under the promissory note. *See id.* The representation was false because Cohen had been performing services for Dr. Gaynor, who was a restricted client, according to Shapiro-Olefsky. *See id* at ¶¶ 18, 35.

Next, the complaint states that Shapiro-Olefsky had a right to rely on that misrepresentation. *See id. at* ¶ 37. Shapiro-Olefsky points to the remedy provisions in the non-competition agreement as proof of its right to rely upon the misrepresentation. Shapiro-Olefsky also alleges facts in support of

---

[8]Shapiro-Olefsky categorizes Cohen's behavior as fraudulent misrepresentation, but Cohen treats it as promissory fraud. For purposes of a motion to dismiss a complaint alleging any type of fraud, we need only satisfy ourselves that Shapiro-Olefsky has adequately stated a claim with particularity. Therefore, the distinction between fraudulent misrepresentation and promissory fraud is irrelevant at this stage.

-7-

the fourth element of its fraudulent inducement claim; Shapiro-Olefsky's payment of $175,000 indicates that it relied on Cohen's representations. *See* Pl. First Am. Compl. ¶ 37.

Fifth, the complaint states that Cohen intended for Shapiro-Olefsky to rely and act on the misrepresentation. *See id. at* ¶ 36. Shapiro-Olefsky claims that Cohen's misrepresentations about his compliance with the terms of the non-compete were intended to induce Shapiro-Olefsky into paying Cohen the $175,000 due under the promissory note. *See id.* Finally, Shapiro-Olefsky sufficiently alleged that Cohen's misrepresentations led to Shapiro-Olefsky's damages.[9] *See id. at* ¶ 37. Under the non-compete agreement, Shapiro-Olefsky had no duty to pay Cohen the sum due under the promissory note in the event of a breach by Cohen. Had Cohen been forthcoming about his services for Dr. Gaynor, Shapiro-Olefsky would not have made payment under the promissory note.

## III. CONCLUSION

For the foregoing reasons, we deny Defendant's motion. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 7/10/03

---

[9] As stated above, the liquidated damages clause is not unreasonable and therefore does not bar Shapiro-Olefsky from recovery. Also, the liquidated damages clause was separate from the $175,000.00 remedy from amounts paid under the Note.

-8-